UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
UNITED STATES OF AMERICA,           )
                                    )          CRIMINAL ACTION
                    Plaintiff,      )          NO. 01-10267-WGY
      `                             )
                                    )
            v.                      )
                                    )
CHARLIE WEBB,                       )
                                    )
                    Defendant.      )
_____)

_____
                                    )
UNITED STATES OF AMERICA,           )
                                    )          CRIMINAL ACTION
                    Plaintiff,      )          NO. 06-10251-WGY
                                    )
                                    )
            v.                      )
                                    )
TIMOTHY MEADOWS,                    )
                                    )
                    Defendant.      )
_____)

YOUNG, D.J.                                    November 9, 2016

**MEMORANDUM AND ORDER**

## I.    INTRODUCTION

On September 13, 2016, the Court heard arguments by

petitioners Charlie Webb ("Webb") and Timothy Meadows

("Meadows") (collectively, the "Defendants") and the government

related to the Defendants' motions to correct sentence pursuant

to 28 U.S.C. § 2255.  Electronic Clerk's Notes, ECF No. 119,

Meadows; Electronic Clerk's Notes, ECF No. 114, Webb.  These by
now familiar motions come on the heels of the Supreme Court's
decisions in Johnson v. United States, 135 S. Ct. 2551 (2015)
(Johnson II) and Welch v. United States, 136 S. Ct. 1257 (2016),
which have generated a flurry of activity from inmates sentenced
under the Armed Career Criminal Act, 18 U.S.C. § 924(e)
("ACCA"), in particular under the now defunct ACCA "residual
clause."  After taking the Defendants' matters under advisement,
this Court now denies Webb's Section 2255 motion to correct his
sentence and allows Meadows's Section 2255 motion to correct his
sentence.  Given the recurrence of the issues discussed, the
Court takes the opportunity to explain its reasoning in this
memorandum.

**A.  Webb and Meadows's Sentencings and Further Proceedings**

On December 20, 2001, a jury sitting in federal court in
Boston convicted Webb of one count of being a felon in
possession of a firearm, under 18 U.S.C. § 922(g)(1).  Jury
Verdict, ECF No. 50, Webb; J., ECF No. 64, Webb.  Similarly, on
April 6, 2007, another federal jury sitting in Boston convicted
Meadows of one count of being a felon in possession of a
firearm, under 18 U.S.C. § 922(g)(1).  Jury Verdict, ECF No. 42,
Meadows.

An individual convicted of being a felon in possession of a
firearm is subject to a prison term of no more than ten years,

18 U.S.C. § 924(a)(2); however, if the individual also has "three previous convictions . . . for a violent felony or a serious drug offense," he qualifies as an armed career criminal under the ACCA, subject to a minimum sentence of fifteen years in prison, 18 U.S.C. § 924(e)(1) (emphasis added).  At the time the Defendants committed their "felon in possession of a firearm" misconduct, "violent felony" was defined as a crime[1] that either "has as an element the use, attempted use, or threatened use of physical force against the person of another," (also known as the "force clause"), is one of the enumerated offenses of "burglary, arson, or extortion," or, in what came to be known as the ACCA "residual clause," "involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another".  18 U.S.C. § 924(e)(2)(B).

When the time came for sentencing, the United States Probation Department classified both defendants as armed career criminals under the ACCA.  Webb PSR 7; Meadows PSR 5.  Webb's predicate convictions were: (1) a 1990 conviction for possession with intent to distribute cocaine; (2) a 1990 conviction for

_____

[1] Specifically, "any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult."  18 U.S.C. § 924(e)(2)(B).

possession with intent to distribute cocaine; (3) a 1993 conviction for distribution of cocaine; and (4) 1996 Massachusetts convictions for assault and battery with a dangerous weapon ("ABDW") and larceny from a person.  Webb PSR 7, 8-11.  Meadows's predicate convictions consisted of: (1) a 1985 conviction for burning a dwelling house; (2) a 1985 Massachusetts conviction for ABDW; and (3) a 1990 conviction for armed robbery while masked.  Meadows PSR 5, 8-11.  Concluding that the predicate offenses satisfied the armed career criminal requirements of the ACCA, this Court sentenced Webb to a prison term of 288 months on June 20, 2002, J., Webb, and Meadows to a prison term of 180 months on November 8, 2007.  J., ECF No. 48-1, Meadows; Tr. Sentencing Excerpt 3: 8-10, ECF No. 48-2, Meadows.  On appeal, the First Circuit affirmed both Defendants' convictions.  United States v. Webb, 70 Fed. App'x 2 (2003); United States v. Meadows, 571 F.3d 131 (2009).  The Supreme Court denied Webb's petition for certiorari on December 1, 2003, Webb v. United States, 540 U.S. 1065 (2003), and Meadows's petition on November 9, 2009.  Meadows v. United States, 558 U.S. 1018 (2009).  Later, both Defendants filed first Section 2255 petitions, which were denied by this Court.  Mot. Vacate, ECF No. 74, Webb; Electronic Endorsement Dismissing Pet. Vacate, ECF No. 74, Webb; Mot. Vacate, ECF No. 66, Meadows; Electronic Order, ECF No. 67, Meadows.

[4]

### B. Ensuing Legal Developments

Years after the Defendants' convictions became final, the Supreme Court held in Johnson II that "imposing an increased sentence under the residual clause of the [ACCA] violate[d] the Constitution's guarantee of due process."  135 S. Ct. at 2563. Soon after, the Supreme Court confirmed in Welch that, as applied to the ACCA, Johnson II announced a "new rule" of constitutional law that was substantive and, thus, retroactively applicable to cases on collateral review, under the framework put forth in Teague v. Lane, 489 U.S. 288 (1989).  Welch, 136 S. Ct. at 1264-65.

### C. The Defendants' Current Section 2255 Petitions

Following Johnson II and Welch, the Defendants filed second or successive Section 2255 petitions on June 14, 2016,(Webb), and on June 19, 2016, (Meadows).[2]  Mot. Vacate, ECF No. 93, Webb; Mot. Vacate, ECF No. 101, Meadows.  In these petitions, both Defendants argue that, because the Supreme Court held the

---

[2] In light of Johnson II and the government's concession that the rule of Johnson II was retroactive, the First Circuit had allowed the Defendants to file the current second or successive Section 2255 motions with this Court, under United States Code Section 2255(h)(2).  See Webb v. United States, No. 16-1430, slip op. (1st Cir. May 17, 2016), ECF No. 92, Webb; Meadows v. United States, No. 15-2567, slip op. (1st Cir. February 4, 2016), ECF No. 98, Meadows.  The government does not contest that both Defendants have filed their Section 2255 petitions within the required statute of limitations, in compliance with Section 2255(f)(3).

residual clause of the ACCA unconstitutional, they no longer meet the threshold number of convictions for armed career criminal designation.  Mot. Vacate 6, Webb; Mot. Vacate 2-3, Meadows.  Specifically, the Defendants argue that some or all of their predicate offenses no longer qualify as violent felonies under 18 U.S.C. § 924(e)(2)(B) because they are not within the scope of the remaining clauses -- the force clause and the enumerated offenses of burglary, arson, and extortion.  Mot. Vacate 6, Webb; Mot. Vacate 2-3, Meadows.  Were the Defendants to prevail based on these arguments, they would be entitled to relief under Section 2255 for serving sentences "imposed in violation of the Constitution or laws of the United States."  28 U.S.C. § 2255(a).

Webb's particular argument is that neither Massachusetts ABDW nor larceny from a person qualify as violent felonies after Johnson II.  Mot. Vacate 6, Webb.  The government concedes that larceny from a person is not a violent felony, waiving this argument.  Government's Resp. Def.'s Pet. 28 U.S.C. § 2255 ("Gov't Resp."), ECF No. 99, Webb.  The government also does not dispute Webb's contention that one of his predicate drug offenses has since been vacated.  Id.  It follows that whether Webb is below the threshold number of required violent felonies or serious drug offenses for armed career criminal designation lives or dies based on his Massachusetts ABDW argument.

As for Meadows, he argues that none of his three predicate convictions qualify as violent felonies.  Mot. Vacate 3, 5, 9, <u>Meadows</u>.  If Meadows could prove that any of his three predicate convictions (Massachusetts arson, ABDW, or armed robbery while masked) is not a violent felony, then he would fall below the threshold number of violent felonies required for his armed career criminal designation.

## II.  ANALYSIS

This Court must first confront a procedural issue the government raised in its briefs opposing the Defendants' Section 2255 petitions.  The government argues, and the Defendants do not dispute, that the Defendants procedurally defaulted by not preserving their claims contesting the constitutionality of the residual clause of the ACCA at trial and on direct appeal. Gov't Resp. 4, <u>Webb</u>; Government's Resp. Def's Pet. 28 U.S.C. § 2255 3 ("Gov't Resp."), ECF No. 107, <u>Meadows</u>.  A procedural default prohibits relief under Section 2255 unless the defendant can show that 1) he had both "cause for having procedurally defaulted his claim" and that the alleged error resulted in "actual prejudice," <u>Bucci</u> v. <u>United States</u>, 662 F.3d 18, 29 (1st Cir. 2011) (internal quotation marks omitted), or 2) that the challenged constitutional error "has probably resulted in the conviction of one who is actually innocent," <u>Bousley</u> v. <u>United States</u>, 523 U.S. 614, 630 (1998) (citation omitted).

The Court proceeds to analyze whether the Defendants have met the cause and prejudice prongs that would excuse them from procedural default.[3]

### A.   Cause

Without giving the term "precise content," the Supreme Court developed a "cause" limitation on habeas relief guided by the "notion that, absent exceptional circumstances, a defendant is bound by the tactical decisions of competent counsel," and by issues of comity.  Reed v. Ross, 468 U.S. 1, 13 (1984).  In guiding the concept's application, the Supreme Court indicated early on that "futility of presenting an objection to the state courts cannot alone constitute cause for a failure to object at trial."  Engle v. Isaac, 456 U.S. 107, 130 (1982) ("If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim.")  In Engle, the Supreme Court also concluded that where a Supreme Court decision preceding the defendant's trial "laid the basis for [the defendant's] constitutional claim,"

---

[3] The Defendants argue "actual innocence" only in their replies to the government's response and they base that argument on their predicate convictions not qualifying as violent felonies.  Reply Government's Resp. 32 ("Reply"), ECF No. 109, Webb; Reply Government's Resp. 35 ("Reply"), ECF No. 114, Meadows.  Given the Court's conclusion about the different underlying felonies, the Court need not reach this argument. See infra.

leading to litigation in "numerous" courts that agreed with the claimants in the years before the defendant's trial, the defendant could not show "cause" to support habeas relief.  Id. at 131-33.  Two years later, in Reed, the Supreme Court built on Engle, laying out some of the circumstances under which the "cause" requirement may be satisfied.  The Supreme Court concluded that the concerns animating the "cause" restrictions are not present where the "procedural failure" is not attributable to "an intentional decision by counsel made in pursuit of his client's interests," such as when "there was no reasonable basis in existing law" for the unraised claim.  Reed, 468 U.S. at 14, 15.  In other words, the "novelty of a constitutional question," may supply the required cause.  Id. at 15-16 (holding that otherwise, the Court might "disrupt state-court proceedings by encouraging defense counsel to include any and all remotely plausible constitutional claims that could, some day, gain recognition").

Reed confined its prescription for the relationship between "novelty" and cause to the situation where the Supreme Court "has articulated a constitutional principle that had not been previously recognized but which is held to have retroactive application."  Id. at 17.  A defendant's attorney's failure to present a certain claim would be "sufficiently excusable" to provide cause where a decision of the Supreme Court either

[ 9 ]

1)"explicitly" overruled one of its precedents or
2)"overturn[ed] a longstanding and widespread practice to which
[the Supreme] Court has not spoken, but which a near-unanimous
body of lower court authority has expressly approved."[4]  Id.
(citations omitted).

In the current petitions, the Defendants argue that their
cases fit into one of these two categories, since their ACCA
claims arise as a result of Johnson II's retroactive
application.  First, Webb argues that his case fits within the
second category enumerated in Reed because, although the Supreme
Court had not yet spoken about the constitutionality of the ACCA
residual clause at the time his conviction became final on
December 1, 2003, the federal courts' rejection of vagueness
challenges and routine imposition of sentences under the
residual clause constituted a "longstanding and widespread
practice."  Reply 4, Webb.  Meadows sees his case as even
stronger -- a candidate for both categories in Reed -- because
the Supreme Court had already decided James v. United States,
550 U.S. 192 (2007), a case that was later overruled by Johnson
II, by the time Meadows was sentenced on November 8, 2007.

---

[4] Reed also mentions a third category, not relevant here,
that may justify cause where a Supreme Court decision
disapproved of a practice it had sanctioned in previous cases.
Id. at 17 (in Reed, the Supreme Court ruled for the defendant on
the basis of this third category).

Johnson II, 135 S. Ct. at 2563 ("We hold that imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process. Our contrary holdings in James and Sykes are overruled."); Reply 28, Meadows.

This Court agrees with both Defendants and joins recent decisions in this circuit to reject the government's cause arguments. See, e.g., Craig v. United States, No. 1:01-CR-00003-GZS-3, 2016 WL 5874965, at *3 (D. Me. Oct. 7, 2016); United States v. Aponte, No. 11-CR-30018-MAP, 2016 WL 5338505, at *1 (D. Mass. Sept. 22, 2016) (Ponsor, J.). Meadows's case is textbook Reed, since Johnson II explicitly disavowed James's conclusion that the residual clause of the ACCA is not unconstitutionally vague, and James predates Meadows's sentencing.[5] See James, 550 U.S. at 210 n.6; Johnson II, 135 S. Ct. at 2563.

---

[5] The government argues that Johnson II's disavowal of James is not sufficient to place Meadows in the first category of Reed because the language referring to the ACCA residual clause in James is a footnote rejection of Justice Scalia's dissent and not an analysis of the parties' arguments that did not touch upon the constitutionality of the ACCA residual clause. Gov't Resp. 5, Meadows. It is beside the point whether either party in James briefed the issue -- be it dicta, the language in James is Supreme Court dicta that binds the decisions of district and circuit courts. See McCoy v. Massachusetts Inst. of Tech., 950 F.2d 13, 19 (1st Cir. 1991) ("federal appellate courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when . . . a dictum is of recent vintage and not enfeebled by any subsequent statement."). Leaving no doubt, Johnson II explicitly states that it overruled James. Johnson II, 135 S. Ct. at 2563. These

Webb's case comes from an earlier period, 2003, when the Supreme Court had not yet spoken on the ACCA residual clause. Other circuit courts and district courts had, however, in some form or another, confronted the constitutionality of the ACCA residual clause.  See Gov't Resp. 5-6, Webb (collecting cases such as United States v. Presley, 52 F.3d 64 (4th Cir. 1995), United States v. Sorenson, 914 F.2d 173 (9th Cir. 1990), United States v. Sanders, 705 F.Supp. 396 (N.D. Ill. 1988)).  Webb and the government trade arguments on whether these and other enumerated cases substantively addressed the constitutionality of the ACCA residual clause, perfunctorily discussed it or actually debated only tangential issues.  Compare Gov't Resp. 5-6, Webb with Reply, 4-6, Webb.  Both parties, however, agree that none of these cases ruled in favor of the constitutional challenge to the ACCA residual clause.  See Gov't Resp. 5-6, Webb; Reply, 4-6, Webb (citing United States v. Child, 430 F.3d 970, 972 ("We agree with every other circuit that has considered this argument and hold that it has no merit.")  This concession places Webb's case squarely within the second category in Reed because the rejection of the residual clause argument, and the related reliance on the residual clause in sentencing, amount to

---

two data points suffice to place Meadows within the first Reed category.

a "longstanding and widespread practice . . . which a near-
unanimous body of lower court authority ha[d] expressly
approved" and which <u>Johnson II</u> overruled.  <u>Reed</u>, 468 U.S. at 17.

The government contends, however, that, given that other
counsel raised unsuccessful challenges to the constitutionality
of the ACCA residual clause prior to Webb's sentencing, Webb's
claim is not novel, but rather within the ambit of <u>Bousley</u>, 523
U.S. 614.  Gov't Resp. 6.  Relying on <u>Bousley</u>, the government
wishes to create a distinction between constitutional challenges
that it deems novel because no one has raised those issues
before and previously raised constitutional challenges that
courts have rejected.  Gov't Resp. 7, <u>Webb</u>.  At first glance,
<u>Bousley</u> and First Circuit case law -- <u>Damon</u> v. <u>United States</u>,
732 F.3d 1 (1st Cir. 2013), applying <u>Bousley</u> -- appear to lend
themselves to such a construction.  <u>Bousley</u> concluded that the
petitioner could not demonstrate cause because "at the time of
petitioner's plea, the Federal Reporters were replete with cases
involving challenges to [similar claims.]"  523 U.S. at 622.
<u>Damon</u> justified the absence of cause on "both the evolving
Supreme Court case law and the number of comparable, albeit
unsuccessful, challenges raised by previous defendants."  <u>Damon</u>,
732 F.3d at 5.

Adopting the government's interpretation would cast <u>Bousley</u>
and its progeny into tension with <u>Reed</u>, because <u>Reed</u>'s second

category explicitly relied on the existence, and not the absence, of "longstanding" adverse court precedent to establish cause.  Reed, 468 U.S. at 17.  First Circuit case law preceding Damon recognized the tension that this interpretation generated, and rejected it.  Simpson v. Matesanz, 175 F.3d 200, 212 (1st Cir. 1999) ("[I]t seems an odd result that a default is not excused where counsel failed to make an objection because the law was squarely against him, but a failure to make an objection may be excused where there was no controlling precedent against the claim . . . . In the absence of better guidance, we will assume arguendo that the familiar Reed unavailability standard is still good law, subject to Bousley's caveat that an argument is not unavailable simply because it has been rejected by a higher court in a different case.").

Even presuming that Damon signaled a different approach, a closer inspection of Bousley and Damon actually reveals no tension between their holdings and the categories created by Reed.  Bousley reviewed and denied a post-conviction petition for relief arising from a retroactive Supreme Court decision that resolved a circuit split over the relevant constitutional challenge.  Bousley, 523 U.S. at 621 (concluding that Bailey v. United States, 516 U.S. 137 (1995), which interpreted 18 U.S.C. § 924(c)(1), applied retroactively); Bailey, 516 U.S. at 142 (listing circuit splits on the interpretation of

Section 924(c)(1)).  Damon refused the petitioner the post-
conviction relief requested as the result of an earlier,
arguably retroactive, First Circuit decision, United States v.
Holloway, 630 F.3d 252 (1st Cir. 2011).  Damon, 732 F.3d at 4-5.
In light of Johnson v. United States, 559 U.S. 133 (2010)
("Johnson I"), Holloway had abrogated the then-binding First
Circuit precedent, United States v. Mangos, 134 F.3d 460 (1st
Cir.1998), which had concluded that Massachusetts assault and
battery charged using the language "did assault and beat," was
categorically a crime of violence under the Sentencing
Guidelines, see Mangos, 134 F.3d at 464.  See Holloway, 630 F.3d
at 254-55.  Although Mangos was the law in the First Circuit,
the Seventh Circuit had ruled in United States v. Jones, 235
F.3d 342 (7th Cir. 2000), that the same charging language did
not indicate whether Massachusetts assault and battery was a
crime of violence.  Jones, 253 F.3d at 347.  Because the Seventh
Circuit and the First Circuit disagreed about the importance of
the charging language, Damon's conclusion that the petitioner's
claim was both futile in the First Circuit and not novel thus
does not conflict with Reed.  Damon, 732 F.3d at 4.  The
existing circuit split failed the Reed unanimity or near-
unanimity requirement for cause, justifying Bousley and Damon's
holdings.

[15]

In contrast, the monumental shift that Johnson II created
in sentencing gives the Court no pause in concluding that both
petitioners satisfied the cause requirement.

The Court now proceeds to assess the prejudice pre-
condition for excusing procedural default.[6]

### B.   Prejudice

Having satisfied cause, a defendant must also establish
"actual prejudice" to excuse procedural default.  In other
words, he must show that "there is a reasonable probability that
the outcome of the trial would have been different but for the
alleged error."  Wilder v. United States, 806 F.3d 653, 658 (1st
Cir. 2015) (internal quotation marks omitted).  Here, this
translates to the Defendants being able to prove their arguments
that some of the convictions underlying their armed career

---

[6] Opposing Webb, the government also argues that even if
Webb's failure to raise the residual clause argument is excused,
Webb provides no reason for excusing his failure to challenge
the inclusion of his convictions within the ACCA force clause.
Gov't Resp. 7, Webb.  Before it was invalidated, the ACCA
residual clause functioned as a "catchall provision,"
Whindleton, 797 F.3d at 112, low-hanging fruit for the
prosecution when requesting an ACCA sentence enhancement, and
the first stop for courts when deciding whether a conviction
qualified as a predicate offense under the ACCA.  See, e.g.,
United States v. Hart, 674 F.3d 33, 44 (1st Cir. 2012)
(concluding that the determination that Massachusetts ABDW was a
predicate offense under the ACCA residual clause,
"pretermitt[ed] the need to analyze it under the force clause").
Due to the functional relationship between the two clauses, the
Court's excusal of the failure to raise the gatekeeper residual
clause argument suffices to also excuse counsel from raising the
related force clause argument.

criminal designations are neither violent felonies covered by
the force clause nor among the enumerated offenses (burglary,
arson, and extortion) in the ACCA.  These enumerated offenses,
also known as generic offenses, refer only to their "generic
versions," not to all possible "variants of the offenses."
Mathis v. United States, 136 S. Ct. 2243, 2248 (2016).

### 1.    ACCA Legal Framework

The statutory "elements" of the crime, not the facts
underlying its commission, determine whether an offense
qualifies as a violent felony.  Descamps v. United States, 133
S. Ct. 2276, 2283 (2013); Mathis, 136 S. Ct. at 2248 (At trial,
"[e]lements" are "what the jury must find beyond a reasonable
doubt.").  This focus on elements has led the Supreme Court to
employ two approaches for determining a conviction's status as a
violent felony: 1) a default "categorical approach," if the
statute defining the offense is indivisible and 2) a "modified
categorical approach," if the statute defining the offense is
divisible.  Descamps, 133 S. Ct. at 2281.  While an indivisible
statute sets out a "single . . . set of elements to define a
single crime," a divisible statute lists "elements in the
alternative," defining multiple crimes, Mathis, 136 S. Ct. at
2248-49.

Under the categorical approach, a court may only look at
the "match" between the elements of the prior offense and the

language of the force clause or the elements of the generic offenses.  Id. at 2248.  There is no such match "if the crime of conviction covers any more than the [ACCA clause] . . . even if the defendant's actual conduct (i.e. the facts of the crime) fits within the [ACCA clause's] boundaries."  Id.

If the statute is divisible, a court employs the modified categorical approach which allows the court to consult more documents.  Id. at 2249 (A court may consider a "limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." (citing Shepard v. United States, 544 U.S. 13, 21 (2005))).

### 2.   Massachusetts ABDW

The statute defining Massachusetts ABDW proscribes the commission of assault and battery "upon another by means of a dangerous weapon."  Mass. Gen. Laws ch. 265, § 15A.  This Court must analyze whether the offense covered by this statute has, under the ACCA force clause, "as an element the use, attempted use, or threatened use of physical force against the person of another[.]"  18 U.S.C. § 924(e)(2)(B)(i).

Both the Defendants and the government agree that in Massachusetts, ABDW can be committed either intentionally or recklessly.  Gov't Resp. 10, Webb; Reply 14, Webb; see also United States v. Hudson, 823 F.3d 11, 17 n.8 (1st Cir. 2016)

(Massachusetts ABDW may be committed recklessly); <u>Commonwealth</u>
v. <u>Burno</u>, 396 Mass. 622, 625 (1986) (Assault and battery
includes "the intentional and unjustified use of force upon the
person of another, however  slight, or the intentional
commission of a wanton or reckless act (something more than
gross negligence) causing physical or bodily injury to
another.") (internal quotation marks and citations omitted);
<u>Commonwealth</u> v. <u>Appleby</u>, 380 Mass. 296, 307 (1980) ("[A]ssault
and battery by means of a dangerous weapon (G.L. c. 265, s 15A)
is a general intent crime in Massachusetts.").

The parties conflict on whether Massachusetts ABDW is
divisible into intentional and reckless ABDW.  Gov't Resp. 20,
<u>Webb</u>; Reply 17, <u>Webb</u>.  This Court need not rule on the
divisibility of the Massachusetts ABDW statute.  Independently
of whether Massachusetts ABDW is divisible or indivisible, this
Court concludes that the Defendants cannot meet their burden of
proving that the offense is not a violent felony under the ACCA
force clause.

Massachusetts jurisprudence established early on that:

> the offense of assault and battery by means of a
> dangerous weapon under [the General Laws of
> Massachusetts chapter] 265, [Section] 15A, requires
> that the elements of assault be present . . . , that
> there be a touching, however slight  . . . , that that
> touching be by means of the weapon . . . , and that
> the battery be accomplished by use of an inherently
> dangerous weapon, or by use of some other object as a

> weapon, with the intent to use that object in a
> dangerous or potentially dangerous fashion.

Appleby, 380 Mass. at 308.  A "dangerous weapon" is either

dangerous per se -- "designed and constructed to produce death

or great bodily harm" -- or as used, if employed "in a dangerous

fashion[.]"  Id. at 303, 304.  Meadows argues that this

definition of ABDW is overbroad with respect to the ACCA force

clause on the grounds that 1) it lacks the requirement of

violent physical force because it may be premised upon a

"touching, however slight" and 2) it lacks the required mens rea

because it can be committed recklessly.  Mot. Vacate 6-7,

Meadows.  Whether Massachusetts ABDW is a categorically violent

felony under the ACCA force clause requires some discussion of

the evolving underlying federal jurisprudence, in particular

that of the First Circuit.

In 2004, in Leocal v. Ashcroft, 543 U.S. 1 (2004), the

Supreme Court set the floor for the mens rea required for an

offense to qualify as a crime of violence under 18 U.S.C. § 16,

a statute that includes a "force clause" whose language almost

completely matches the ACCA force clause,[7] and a "residual

---

[7] The force clauses under Section 16, the ACCA, and the
Sentencing Guidelines are similar to the point that they have
been interpreted together.  See United States v. Hudson, 823
F.3d 11, 16 (1st Cir. 2016); United States v. Ramirez, 708 F.3d
295, 310 (1st Cir. 2013).

clause" that differs more substantially from the ACCA residual clause.[8]  Because "the use . . . of force against the person of another" suggests a "higher degree of intent than negligent or merely accidental conduct," the Supreme Court concluded that the Leocal petitioner's DUI offense was not encompassed by the Section 16(a) force clause or by the Section 16(b) residual clause.  Leocal, 543 U.S. at 3, 10.  The Supreme Court noted, however, that it was not deciding whether "a state or federal offense that requires proof of the reckless use of force against a person" fell within the purview of Section 16.  Id. at 13 (emphasis in the original); see also United States v. Booker, 644 F.3d 12, 20 (1st Cir. 2011) (noting that the Supreme Court has reserved judgment on the issue of recklessness, has not revisited the issue since Leocal, and the First Circuit has not had the occasion to rule on it).

In 2009, the First Circuit held that the related offense of Massachusetts assault with a dangerous weapon ("ADW") is a crime of violence under the force clause of the Sentencing Guidelines.

---

[8] United States Code Section 16(a) includes the use of force against the "property of another," in addition to against the person of another.  18 U.S.C. § 16(a).  The Section 16(b) residual clause required an offense involving "a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," id. § 16(b) (emphasis added), as opposed to the ACCA residual clause's required "serious potential risk."

United States v. Am, 564 F.3d 25, 33–34 (1st Cir. 2009).  In
that opinion, the First Circuit stated that ADW was a general
intent crime.  Id. at 34.

In 2010, the Supreme Court decided Johnson I, holding that
a Florida felony offense of battery that requires "actual[] and
intentional[] touching," which can be satisfied "by any
intentional physical contact, no matter how slight," does not
satisfy the ACCA force clause requirement that "violent force"
that must be "capable of causing physical pain or injury to
another person," be employed.  Johnson I, 559 U.S. at 138, 140.

In 2011, the First Circuit addressed Massachusetts simple
assault and battery, ruling that the offense is not a violent
felony under the ACCA residual clause because it includes
reckless battery, an offense which "does not typically involve
purposeful conduct and thus is not similar in kind to the
offenses enumerated [in the ACCA]."  Holloway, 630 F.3d at 261
(citing Begay v. United States, 553 U.S. 137 (2008), for the
proposition that offenses that fall under the ACCA residual
clause must involve purposeful conduct).  Holloway's opinion did
not discuss the relationship between the ACCA force clause and
recklessness.

In contrast, in 2012, the First Circuit concluded that
Massachusetts ABDW was a violent felony under the yet-to-be-
invalidated ACCA residual clause, premising its argument on the

[22]

nature of a "dangerous weapon" that is "designed to cause, or wielded . . . in a manner capable of producing, serious bodily harm." United States v. Hart, 674 F.3d 33, 43 (1st Cir. 2012). Hart distinguished Holloway by noting that ABDW is not ordinarily committed recklessly, id. -- an analysis that had relevance before the residual clause was invalidated.

In 2014, the First Circuit addressed whether Massachusetts ABDW was a crime of violence under Section 16. United States v. Fish, 758 F.3d 1, 8-9 (1st Cir. 2014). Although the government had not argued that Massachusetts ABDW qualifies under the Section 16 force clause, the First Circuit noted that Johnson I's requirement of violent force for the ACCA force clause imports into Section 16(a), disqualifying Massachusetts ABDW because the offense can be accomplished "by a mere touching however slight." Id. (internal quotation marks omitted). The disqualifying portion of the offense was the intentional variant, not the reckless one that results in "physical or bodily injury to another." Id. at 9 n.3 (citing Hart, 674 F.3d 33). Massachusetts ABDW did not fare much better under the Section 16(b) "residual clause." The panel recognized that Leocal only excluded "negligence-or-less" offenses from the scope of Section 16; nevertheless, the panel concluded that the Leocal logic applies to recklessness, agreeing with other

[23]

circuits that had held that Section 16(b) does not include recklessness offenses. Id. at 9-10 & n.4.

In 2015, after the Supreme Court decided Johnson II, the First Circuit revisited the Am decision in light of Johnson I and reaffirmed its prior conclusion that Massachusetts ADW is a violent felony under the ACCA force clause. United States v. Whindleton, 797 F.3d 105, 116 (1st Cir. 2015). This time, the opinion elaborated on the reasons behind the classification, zeroing in on the relevance of the "dangerous weapon" element which convinced the panel that "the harm threatened by an assault is far more violent than offensive touching when committed with a weapon that is designed to produce or used in a way that is capable of producing serious bodily harm or death." Id. at 114. To support its conclusion, Whindleton also relied in part on Hart's emphasis on the dangerous weapon element in the context of the now-invalidated ACCA residual clause. Id. at 114-115 ("Like in Hart, ADW can be a violent felony under the Force Clause, even if simple assault is not, by virtue of the additional dangerous-weapon element."). The Whindleton decision was agnostic about mens rea, whether in Hart or in the case at bar, because, as the panel noted in a footnote, the petitioner had not raised the issues of the required level of intent nor whether Fish applied or was relevant to Massachusetts ADW. Id. at 116 n.12.

A year later, in 2016, another petitioner raised the issue of the Massachusetts ADW mens rea in light of Fish's residual clause analysis.  United States v. Hudson, 823 F.3d 11 (1st Cir. 2016).  The First Circuit reconcluded Am had misspoken, and that Massachusetts ADW is a violent felony under the ACCA force clause because Massachusetts ADW could not be committed recklessly.  Id. at 17 & n.8.  Issued the same week, the First Circuit's decision in United States v. Fields, 823 F.3d 20 (1st Cir. 2016), represented the first break with Fish's conclusion that Massachusetts ABDW is overbroad relative to the Section 16 force clause, and implicitly relative to the ACCA force clause. Id. at 35 n.12.  The First Circuit ruled that Whindleton foreclosed a petitioner's argument that Massachusetts ADW was not a crime of violence under the Guidelines force clause because the statute criminalized "attempted or threatened offensive touching."  Id. at 34.  The panel chose to resolve the apparent tension between the language of Fish and Whindleton by stating that the petitioner could not rely on Fish because that decision rested solely on the Section 16 residual clause, turning into dicta Fish's conclusion that Massachusetts ABDW is outside the scope of the Section 16 force clause because "offensive touching" does not have the use of physical force as an element.  Id. at 35 n.12.

Where does this series of decisions leave this Court today? Given Fields's characterization of the Fish language about the force clause as dicta, this Court can no longer rely in good faith on Fish to conclude summarily that Massachusetts ABDW is not a violent felony.  Hart, Whindleton, and Fields suggest that, notwithstanding the intensity of the "touching" implicated in the commission of a Massachusetts ABDW, the "dangerous weapon" element is sufficient to implicate the use or threat of use of "violent force" required by Johnson I and to distinguish Massachusetts ABDW from related state statutes that may fall outside the ACCA scope because they also include "offensive touching."  See, e.g., Commonwealth v. Beal, 474 Mass. 341, 351-52 (2016) (assault and battery upon a public employee is not a violent crime under the Massachusetts ACCA because one of the variants of intentional battery -- offensive battery -- "can be committed through such de minimis touchings as tickling and spitting").

What remains is Meadows's second argument -- the question of intent. The Supreme Court has not yet addressed whether a reckless mens rea suffices for an offense to fall within the scope of the ACCA or related statutes.  In Leocal, it explicitly ruled out only negligence or less.  Leocal, 543 U.S. at 9-10. Despite the Leocal's note that it was not discussing recklessness, the First Circuit interpreted the logic of Leocal

also to rule out recklessness as mens rea sufficient to support
Massachusetts ABDW as a crime of violence under the Section
16(b) residual clause.  Fish, 758 F.3d at 9-10 & n.4.  This
conclusion still stands after Fields.  It is worth observing,
however, that Fish did not use the Leocal argument likewise to
rule that the Massachusetts ABDW is overbroad vis-à-vis the
Section 16 force clause, but employed a different analysis,
limited to intentional Massachusetts ABDW, that relied on the
type of force used.  Id. at 9.  When the First Circuit reached
similar "residual clause" conclusions with respect to other
statutes, it relied primarily on the fact that offenses under
the residual clause must share the same purposeful mens rea as
the enumerated offenses, as per Begay.  See, e.g., Holloway, 630
F.3d at 261 (reckless battery fails the residual clause
requirements).  The Supreme Court or the First Circuit have not
yet indicated that the mens rea floor for the ACCA residual
clause mandates any conclusions about mens rea under the ACCA
force clause.  See, e.g., Booker, 644 F.3d at 20 (rejecting the
petitioner's argument that the phrase "use of physical force"
must implicate a heightened mens rea by pointing that "Begay
dealt solely with the residual clause of the ACCA definition of
violent felony.  Begay's holding neither addressed nor sheds any
light on the meaning of 'use of physical force,' a phrase which
appears only in the force clause.").  Nor does the First Circuit

[27]

emphasis on Massachusetts ADW's ACCA-qualifying specific intent dismiss recklessness as a sufficient mens rea for the force clause.  See Hudson, 823 F.3d at 17.

It is true that Fish's expansion of the reach of Leocal to include recklessness appears to work independently from the specifics of the Section 16 residual clause.  A recent Supreme Court decision, postdating Fields, however, at the very least tamps down this inference.

In Voisine v. United States, 136 S. Ct. 2272 (2016), the Supreme Court ruled that misdemeanor crimes of domestic violence convictions for reckless conduct involve the use of physical force.  Id. at 2276.  This conclusion relied on both statutory interpretation and the relevant history of the federal statutes, 18 U.S.C. § 922(g)(9) and 18 U.S.C. § 921(a)(33)(A), prohibiting anyone who had committed a misdemeanor crime of violence from possessing a firearm and defining misdemeanor crime of violence. Id. at 2278.  Pointing to dictionary definitions and ordinary meaning, the Supreme Court interpreted the word "use" in Section 921(a)(33)(A) as "indifferent as to whether the actor has the mental state of intention, knowledge, or recklessness with respect to the harmful consequences of his volitional conduct." Id.

Voisine considered equally relevant the legislative history behind the enactment of Section 922(g)(9).  Id. at 2280.  The

[28]

Supreme Court explained that Congress enacted Section 922(g)(9) to bar "domestic abusers convicted of garden-variety assault or battery misdemeanors" from owning guns.  Id.  Because this language linked Section 922(g)(9) to offenses that, under the then-existing Model Penal Code, accepted a mens rea of recklessness, the Supreme Court reasoned that Congress "must have known it was sweeping in some persons who had engaged in reckless conduct."  Id.

The Voisine opinion also rejected the suggestion that Leocal implied that the use of physical force cannot include recklessness, interpreting Leocal as having excluded only accidental conduct from the purview of Section 16 and not reckless conduct, which requires "acts undertaken with awareness of their substantial risk of causing injury."  Id. ("The harm [reckless] conduct causes is the result of a deliberate decision to endanger another -- no more an accident than if the substantial risk were practically certain.") (internal quotation marks omitted).  It follows that after Voisine, Leocal cannot be the basis for deeming reckless Massachusetts ABDW outside the scope of the ACCA force clause.

The government urges this Court to go one step further and rely on the full reasoning of Voisine to rule that reckless Massachusetts ABDW is within the scope of the ACCA force clause. Gov't Resp. 17-18, Webb.  Without concluding that the rule of

[29]

Voisine[9] binds this Court in its discussion of the ACCA force clause, the Court nonetheless considers Voisine's statutory analysis persuasive and agrees with the government on this point.

This Court first acknowledges that Supreme Court precedent indicates that the interpretation of the use of force language in the misdemeanor context may diverge from the interpretation of identical language in statutes covering felonies, such as the ACCA or Section 16.  See United States v. Castleman, 134 S. Ct. 1405, 1410 (2014) (giving the same common-law meaning to the word "force" in the ACCA force clause and Section 921(a)(33)(A) would amount to a "comical misfit"); Whyte v. Lynch, 807 F.3d 463, 471 (1st Cir. 2015), reh'g denied, 815 F.3d 92 (1st Cir. 2016).  This Court also acknowledges that, prior to Voisine, other circuits had held that recklessness is not sufficient for the ACCA force clause.  See, e.g., United States v. Parnell, 818 F.3d 974, 981 n.5 (9th Cir. 2016) (relying on a line of Ninth Circuit precedent that justified the exclusion of recklessness offenses from the universe of crimes of violence/violent felonies on the language in Leocal, to rule that reckless Massachusetts ABDW is outside the scope of the ACCA force

---

[9] Voisine notes that the decision on the scope of misdemeanor crime of violence "does not resolve" whether Section 16 includes recklessness.  Voisine, 136 S. Ct. at 2280 n.4.

clause); United States v. Duran, 696 F.3d 1089, 1095 (10th Cir.
2012) (concluding that Texas reckless aggravated assault is not
a crime of violence under either clause of the Guidelines
because Begay had ruled that under the ACCA residual clause, a
violent felony requires a higher mens rea than recklessness);
United States v. McMurray, 653 F.3d 367, 374 (6th Cir. 2011)
(using Leocal logic to hold that Tennessee reckless aggravated
assault is not a violent felony under the ACCA).  As noted
above, the grounds for these decisions are unpersuasive,
especially after Voisine's review of Leocal.  But see Bennett v.
United States, No. 1:16-CV-251-GZS, 2016 WL 3676145, at *4 (D.
Me. July 6, 2016) (combining Castleman and the above persuasive
circuit precedent to conclude that, despite Voisine, Maine
aggravated assault is not a violent felony under the ACCA force
clause).

    In contrast, persuaded in large part by Voisine's statutory
analysis, the two circuits that had previously published
decisions grappling with the relationship between the mens rea
of recklessness and the force clause concluded that recklessness
may suffice for an offense to fall under the force clause.  See
United States v. Howell, No. 15-10336, 2016 WL 5314661, at *9
(5th Cir. Sept. 22, 2016) (in a discussion analogous to
Voisine's discussion of the legislative history of the
misdemeanor crime of violence, the Fifth Circuit concluded the

Guidelines' force clause may include reckless offenses because, among others, "[t]he Sentencing Commission similarly must have known that the Model Penal Code had taken the position that a mens rea of recklessness should establish criminal liability and that various states incorporated that view into assault statutes");[10] United States v. Fogg, No. 15-3078, 2016 WL 4698954, at *3 (8th Cir. Sept. 8, 2016) (a "reckless discharge of a firearm" under a Minnesota statute may qualify as a violent felony under the ACCA force clause).  But see United States v. Mitchell, No. 15-7076, 2016 WL 3569764, at *5 n.5 (10th Cir. June 29, 2016) (reaffirming that "without intentional or purposeful conduct . . . an offense does not constitute a crime of violence" under the Guidelines).  This Court agrees with these Circuits' conclusions.

This Court also notes that Castleman may bear less relevance in the context here than the Defendants would like it to.  Reply 20, Webb.  In Johnson I, the Supreme Court had

---

[10] This Court notes that Howell's analogy finds support in the House of Representatives's Committee on the Judiciary Report on the 1986 Amendment to the ACCA that added the "force clause" to the proscribed offenses; this report stated that the purpose of the new clause was to include "such felonies involving physical force against a person such as murder, rape, assault, robbery, etc."  H.R. Rep. No. 99-849 at 3 (1986) (emphasis added); see generally Brett T. Runyon, ACCA Residual Clause: Strike Four? The Court's Missed Opportunity to Create A Workable Residual Clause Violent Felony Test (Sykes v. United States, 131 S. Ct. 2267 (2011)), 51 Washburn L.J. 447 (2012) (legislative history of the ACCA).

rejected the government's proposal that it read "physical force"
in the ACCA force clause to match a meaning "derived" from the
common law misdemeanor because there was "no reason to define
'violent felony' by reference to a nonviolent misdemeanor."
Johnson I, 559 U.S. at 141-42.  Instead, the Supreme Court
interpreted "physical force" more closely to resemble the
"normal[]" meaning of the phrase.  Id. at 142 ("'[P]hysical
force' itself normally connotes force strong enough to
constitute 'power'-- and all the more so when it is contained in
a definition of 'violent felony.'").  Conversely, in Castleman,
the Supreme Court's interpretation of "physical force" for the
purpose of defining the misdemeanor crime of violence,
"embrace[d]" the meaning derived from the common law misdemeanor
for "[t]he very reasons [the Supreme Court] gave for rejecting
that meaning in defining a 'violent felony'" in Johnson I.
Castleman, 134 S. Ct. at 1410.  That is not the case with
Voisine.  There, the Supreme Court conducted a dictionary and
ordinary meaning analysis of the word "use" without any
particular reference to misdemeanor-specific definitions.
Voisine, 136 S. Ct. at 2278-79.  The Voisine approach is more
akin to the interpretative method in Johnson I.  As such, there
is no immediate reason for rejecting the Voisine interpretation

in the violent felony context.[11]   Nor is there something
inherently non-violent in felonies committed recklessly –– on
the contrary, reckless Massachusetts ABDW requires a "wilful,
wanton and reckless act which results in personal injury to
another," Commonwealth v. Welch, 16 Mass.App.Ct. 271, 274
(1983), and lends itself to the conclusion that it implicates
the use or threatened use of some violent force.   Cf.
Commonwealth v. Eberhart, 461 Mass. 809, 818 (2012) (holding
that reckless battery qualifies as a violent crime under the
Massachusetts ACCA force clause).

In sum, this Court concludes that, whether divisible or
not, the Massachusetts ABDW has both the required level of mens
rea and the required level of force for a violent felony under
the ACCA force clause.

---

[11] Contrary to the Defendants' argument, Reply 20, Webb,
Booker does not compel this Court to a different conclusion.   In
Booker, the First Circuit rejected the petitioner's argument
that Leocal mandates a conclusion that a misdemeanor crime of
violence under Section 922(g)(9) requires a mens rea higher than
recklessness.   Booker, 644 F.3d at 20.   After noting that Leocal
and Begay did not discuss the mens rea required for misdemeanor
crime of violence or the ACCA force clause, the First Circuit
added that there are "sound reasons to decline to interpret the
[ACCA and Section 922(g)(9)] statutes in tandem."   Id.   This
Court, along with the other circuits so concluding, adopts the
Voisine analysis not because it relates to misdemeanor crimes of
violence but because it independently supports a persuasive
interpretation of the ACCA force clause.

### 3.   Burning a Dwelling House

Meadows argues that burning a dwelling house ("arson") does not meet the definition of the generic enumerated offense of arson in the ACCA.  Mot. Vacate 3-5, Meadows.  The Massachusetts arson statute defines the offense as:

> Whoever wilfully and maliciously sets fire to, burns, or causes to be burned, or whoever aids, counsels or procures the burning of, a dwelling house, or a building adjoining or adjacent to a dwelling house, or a building by the burning whereof a dwelling house is burned, whether such dwelling house or other building is the property of himself or another and whether the same is occupied or unoccupied, shall be punished . . . .

Mass. Gen. Laws ch. 266, § 1.  Meadows's argument that the burning of a dwelling is overbroad relies on either: the "caus[ing,]" "counsel[ing,]" and "procur[ing]" of a burning; or the burning of a "property . . . of another" elements sweeping more broadly than generic arson.  Mot. Vacate 3-5, Meadows; see Descamps, 133 S. Ct. at 2283 ("if the statute sweeps more broadly than the generic crime, a conviction under that law cannot count as an ACCA predicate, even if the defendant actually committed the offense in its generic form").  This Court is persuaded by Meadows's first argument.

In establishing that the ACCA enumerated offenses referred only to their generic core, the Supreme Court indicated that this "generic, contemporary meaning" of the offense could be

extracted from a review of modern statutes and the Model Penal Code.  Taylor v. United States, 495 U.S. 575, 598 & n.8 (1990); United States v. Rede-Mendez, 680 F.3d 552, 556-58 (6th Cir. 2012).  The Supreme Court, however, has never defined generic arson.  It has generally indicated only that all ACCA enumerated offenses typically implicate purposeful conduct.  Begay, 553 U.S. at 144-45; Hart, 674 F.3d at 43; see also United States v. Misleveck, 735 F.3d 983, 987 (7th Cir. 2013) (The Supreme Court has "neither defined 'purposeful' nor explained the qualifier 'typically.'").  A significant number of circuits have, however, taken up defining generic arson, converging on the elements of willfulness and malice.  United States v. Gatson, 776 F.3d 405, 410 (6th Cir. 2015) ("[G]eneric arson embraces the intentional or malicious burning of any property.") (internal quotation marks omitted); Misleveck, 735 F.3d at 988 ("intentional or malicious burning of property"); United States v. Knight, 606 F.3d 171, 174 (4th Cir. 2010)(agreeing with current consensus that arson involves the "malicious burning of property"); United States v. Whaley, 552 F.3d 904, 907 (8th Cir. 2009) ("the malicious burning of real or personal property of another"); United States v. Velez-Alderete, 569 F.3d 541, 544 (5th Cir. 2009) ("willful and malicious burning of property"); United States v. Velasquez-Reyes, 427 F.3d 1227, 1230 (9th Cir. 2005) ("willful and malicious" burning of property).  These elements

are often modeled on federal arson statutes.  See Misleveck, 735
F.3d at 986; Whaley, 552 F.3d at 906.  This reliance has
produced some consistency in defining malice.  See Misleveck,
735 F.3d at 987 ("Maliciously" means "deliberately (or in
willful disregard of known or suspected consequences) using fire
to do a harmful act."); Whaley, 552 F.3d at 907 (Maliciousness
requires "willful disregard of the likelihood that damage or
injury would result." (quoting United States v. Gullett, 75 F.3d
941, 947 (4th Cir. 1996))) (internal quotation marks omitted);
see also Gatson, 776 F.3d at 410 (adopting the Misleveck
definition for generic arson); Velez-Alderete, 569 F.3d at 546
(The generic definition of arson includes "'the knowing burning
of personal property without consent or with unlawful intent.'"
(quoting United States v. Miller, 246 F.App'x 369, 372 (6th Cir.
2007))); Velasquez-Reyes, 427 F.3d at 1230 (borrowing the
willful and malicious requirement from the federal arson
statute).

In Massachusetts, the arson statute encompasses two
theories of guilt -- a defendant can commit arson, first, by
"willfully and maliciously" burning a dwelling or, second, by
aiding, counseling, or procuring the burning.  See Commonwealth
v. DeStefano, 16 Mass. App. Ct. 208, 215 (1983)("[I]t is enough
to support a conviction if it can be determined, beyond a
reasonable doubt, that one of these forms of misconduct must

[37]

have occurred, although the fact finder cannot say with certainty which one.").

Given the statute's indivisibility, the Court employs the categorical approach to compare the elements of Massachusetts arson to those of the generic offense.  "Malice" in the Massachusetts arson statute has three components: "[t]he wilful doing of an unlawful act without excuse is ordinarily sufficient to support the allegation that it was done maliciously and with criminal intent."  Commonwealth v. Dung Van Tran, 463 Mass. 8, 26 (2012) (citing Commonwealth v. McLaughlin, 431 Mass. 506, 513 n.6 (2000)).  The term "willful"[12] is equivalent to "intentional" without any reference to "evil intent."  Id.  The second theory of arson -- the aiding, counseling, or procuring of the burning -- does not mandate that the defendant acted "wilfully and maliciously," but requires some purpose and knowledge directed towards the acts of aiding, counseling, or procuring -- not towards the actual burning.  See Commonwealth v. DeCicco, 44 Mass. App. Ct. 111, 118 (1998) ("[T]he Commonwealth [does not] have to prove that the defendant acted willfully or maliciously. . . .  The assistance has to be purposeful.  The person must know they are aiding, counseling, assisting, or

---

[12] Although this Court uses the contemporary spelling of "willful," numerous quoted sources use the original spelling, "wilful."

[38]

advising the other person with respect to the burning of a
building.");[13] DeStefano, 16 Mass. App. Ct. at 217 (for the
prosecution to prove its case against the defendant as a
principal, it was sufficient that "[another individual] ( . . .
acting at [the defendant's] request and with [the defendant's]
aid and counsel) . . . willfully and maliciously set the
fires").

In Massachusetts, under the second theory of arson, this
mens rea requirement is insufficient to be subsumed within the
general arson mens rea because Massachusetts does not
necessarily require the prosecution to prove that the defendant
had any state of mind with respect to the actual burning.[14]   See
Misleveck, 753 F.3d at 988 (generic arson must punish more than
gross negligence).   This Court concludes that the indivisible

---

[13] DeCicco, citing Commonwealth v. Bloomberg, 302 Mass. 349
(1939), analyzes the second theory of arson under an accessory
before the fact framework.   DeCicco, 44 Mass. App. Ct. at 118.
Bloomberg, however, did not stand for this equivalence.   See
Bloomberg, 302 Mass. at 353 (refusing to decide whether the
second theory of the Massachusetts arson statute includes
accessory before the fact).

[14] If charged under the second theory of arson, a
defendant's assistance may not be "inadvertent" -- for example,
a jury may consider evidence that the defendant did not believe
that a certain individual would actually burn a dwelling.
DeCiccio, 44 Mass. App. Ct. at 118.   This is, however, not the
equivalent of including a requirement that the defendant
willfully disregards known or "suspected consequences," see
Misleveck, 753 F.3d at 987 (emphasis in the original) (quoting
mens rea requirement for federal arson statute underlying
generic arson mens rea).

Massachusetts arson statute is overbroad with respect to generic arson, removing Meadows's conviction for arson in Massachusetts from the category of violent felonies under the ACCA.[15]

Because Massachusetts ABDW is a violent felony but Massachusetts arson is not, the Court reaches different conclusions with respect to the two petitioners: Webb has not proven prejudice but Meadows has.  Thus, the former is not entitled to relief.  The latter is, because the substance of Meadows's claim (that he is not an armed career criminal because he does not have the requisite number of violent felonies and serious drug offenses after <u>Johnson II</u>) also proves prejudice.

### III.   CONCLUSION

For the foregoing reasons, the Court DENIES Webb's motion to correct sentence pursuant to 28 U.S.C. § 2255.  A certificate of appealability will issue.  The Court ALLOWS Meadows's motion to correct sentence pursuant to 28 U.S.C. § 2255 and will promptly schedule a resentencing.

**SO ORDERED.**

/s/William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE

---

[15] The government does not dispute that Massachusetts arson is not a violent felony under the ACCA force clause -- the Court considers this argument waived.

[40]